## THE RUTHERFORD.

(District Court, E. D. Pennsylvania. March 4, 1904.)

### No. 9.

**1. SHIPPING—INJURIES TO SEAMEN—LIABILITY OF VESSEL—EVIDENCE.**

Where a seaman claimed that an injury, consisting in the freezing of his hands, resulted from his being compelled by the master to remain in the pilot house, at the wheel, for a long period of time, in very low temperature, and to rub the frost from the glass of the pilot house with his bare hands while he steered the vessel, but it appeared that there was a stove and plenty of coal in the pilot house. together with waste which could have been used to wipe the glass, and that the injury was more probably due to the fact that plaintiff only had a thin pair of gloves, which were wholly inadequate to keep his hands warm, and on his return home he only visited a physician for such injuries five times during one month, the evidence did not justify a recovery against the vessel.

In Admiralty.

Clifford S. Beale, for libelant.

John G. Lamb, for respondent.

J. B. McPHERSON, District Judge. The libelant was a deck hand on board the barge Rutherford—a vessel that was carrying coal from Philadelphia to Boston, in December, 1902. On the 9th of that month, while the tow was just outside the harbor of Boston, the weather was bitterly cold. A severe northwest wind was blowing; and the water was covered with a dense vapor, that speedily froze upon almost any object it touched. The tow lay to for several hours, waiting for the vapor or fog to rise, and during this time the libelant's hands were so severely frost-bitten that he was almost incapacitated for further work during the voyage, and has suffered much pain and inconvenience from his injuries. He charges that the vessel is to blame for his hurt and suffering, and sets out the fault complained of as follows:

"(1) * * * That, notwithstanding the regular morning trick of the libelant at the wheel was from eight o'clock a. m. until ten o'clock a. m., he was compelled by the master of the barge on the morning of December 8, 1902, to take the wheel at 7:30 a. m., and compelled to remain until 12:40 p. m. During the time the libelant was at the wheel as aforesaid, the vapor, etc., froze on the glass of the pilot house on account of the low temperature and insufficient heat in said pilot house, and the libelant was ordered and compelled by the said master to continually rub the front glass of the pilot house alternately with his raw hands, while he steered with the other, in order to keep the glass in front of him free from ice, so he could see through said glass. The said master did not remain in said pilot house, but occasionally visited it.

"(2) That the weather was not of such severity to cause any danger to the vessel or the rest of the tow, but they were lying to on account of the thickness of the weather. That, on account of being compelled to keep the glass of the pilot house free from ice with his bare hands, they became extremely cold. The libelant complained to the said master of the cold as above, but, notwithstanding the fact that there were other deck hands, and that there was no danger, the master, willfully, maliciously, negligently, and with utter disregard of life and safety, ordered, and compelled the libelant to remain at the wheel and keep the glass free of ice with his bare hands. The libelant feared to leave the wheel, or to disobey the orders of the said master. That, in consequence of said master's actions and orders as aforesaid, the hands of the libelant were frozen so badly that the flesh has gone from his fingers, and his hands rendered useless."

There is a decided conflict in the testimony upon this subject, but I think the weight of the evidence is in favor of the following findings of fact, which I quote from the brief of the respondent's counsel:

"The said tug, with this barge and two others in tow, arrived outside of Boston Harbor on December 9th. It was intensely cold, and, because of the presence of vapor on the water, caused by the cold weather, they lay outside the harbor until the next morning, with just speed enough to hold the tow, waiting for the vapor to rise. The Rutherford was the barge next to the tug. The pilot house was heated by a stove, and there was fire in it that morning certainly as late as six o'clock. There was plenty of coal, and it was the duty of some one of the crew to keep up the fire. The captain took the wheel while the crew were at breakfast. After breakfast that morning, at seven o'clock, the captain sent the men forward to break the ice off the anchor, and kept the wheel himself. The vapor had caused a frost to collect on the inside of the glass in the pilot house, and, as it was necessary to see the tug, in order to follow in her wake, the captain wiped a small spot in the glass clear for that purpose. He used a piece of cloth or waste for that purpose. There was a locker in the pilot house, where the waste was kept. There was plenty on board, and it was the duty of the man who tended the lamps to see that waste was kept in the pilot house. The person who tended the lamps at that time was the libelant.

"As this was libelant's first trip, and he was poorly clad, the captain, after about three-quarters of an hour, called him in from chopping ice, put him at the wheel, and went out himself and took libelant's place at chopping ice, after instructing libelant how to keep the glass clear with the cloth or waste. They worked at clearing away the ice until about 10:30 that morning.

"Libelant claims that the captain came back to the pilot house and ordered him to stop using a cloth or cap to clear the glass, and made him use his bare hands for that purpose, and that in consequence of this they were frozen; that he called the captain's attention to his hands next day, and asked him to be permitted to go to a hospital in Boston to have them attended to, but he was refused. The libelant came back with the barge to Philadelphia, attended to his duties on the trip, then left the service about December 18th. He did not seek medical attendance until some four weeks afterward. He then visited a doctor five times from the middle of January until the early part of February, and has had no medical attendance since."

Upon these facts, no fault of the vessel is discernible. The libelant was unfortunate enough to suffer severely from the cold, but I think the testimony shows satisfactorily that his injury was more probably due to the insufficient covering of his hands than to any other cause. He had only a thin pair of gloves or mittens, wholly inadequate to keep his hands warm; and to this fact, I think, his misfortune was largely due. I am unable to accept the theory set up in the libel—that the master ordered him to use his bare hands—and it is quite clear that he could not have used them alternately in the manner he describes. I have no doubt that he suffered much pain, for it is well known that an injury of this kind is very hard indeed to bear; but the extent of the injury, I think, must certainly have been exaggerated, for, even after he returned to his home in Philadelphia, he did not think the matter serious enough to require him to go to a physician for more than a month. It seems to have been a regrettable case of injury due to exposure in severe weather, but the libelant was not the only sufferer, for the master of the barge himself suffered also from frost-bitten hands, due to exposure at the same time. I am sorry for the libelant's misfortune, but I can see no ground for laying the burden of his injury to the account of the vessel.

A decree may be entered dismissing the libel.